# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 97 C 742 | **DATE** | 9/8/2003 |
| **CASE TITLE** | Wright vs. Touhy, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the Touhy Defendants' Motion to Compel Plaintiffs to Produce Legal Bills and Time Records, to Bar Plaintiffs from Seeking Damages based on Monies Paid to Donald Bryk, and for Issuance of Rule to Show Cause (the "Touhy Defendants' Motion") [190-1] is granted in part and denied in part as follows: (a) the Motion to Compel Plaintiffs to Produce Legal Bills and Time Records is granted, subject to a protective order set out in the Memorandum Opinion and Order;(b) the Motion to Bar Plaintiffs from Seeking Damages based on Monies Paid to Donald Bryk is granted;(c) the Motion for Issuance of Rule to Show Cause is denied but other relief is ordered; and(d) the Touhy defendants are awarded two-thirds of their fees and costs in bringing the motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 09 2003 date docketed | 207 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 9/8/2003 date mailed notice | |
| GR | courtroom deputy's initials | 03 SEP -8 PM 4:46 Date/Time received in Central Clerk's Office | GR mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TAMMY WRIGHT,<br>Plaintiff,<br><br>v.<br><br>TIMOTHY J. TOUHY, et al.,<br>Defendants. | Cause No. 97 C 742<br><br>Judge Joan Humphrey Lefkow<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

DOCKETED
SEP 09 2003

This case comes to be heard on the Touhy Defendants' Motion to Compel Plaintiffs to Produce Legal Bills and Time Records, to Bar Plaintiffs from Seeking Damages based on Monies Paid to Donald Bryk, and for Issuance of Rule to Show Cause (the "Touhy Defendants' Motion"). [Dkt # 190]. For the reasons set forth below, it is hereby ordered as follows:

(a) the Motion to Compel Plaintiffs to Produce Legal Bills and Time Records is granted, subject to a protective order as described below;
(b) the Motion to Bar Plaintiffs from Seeking Damages based on Monies Paid to Donald Bryk is granted;
(c) the Motion for Issuance of Rule to Show Cause is denied but other relief is ordered; and
(d) the Touhy defendants are awarded two-thirds of their fees and costs in bringing the motion.

## DISCUSSION

The facts underlying this lawsuit were set out in this court's Order dated October 15, 2002. [Dkt # 145.] This court, like Judges Pallmeyer and Schenkier who previously supervised discovery in this case, has been trying to get the parties to complete discovery in this contentious litigation.

1

201

In February 2003, this court entered an order setting forth a schedule of depositions and ordering fact discovery to close on July 8, 2003. (Order, Feb. 10, 2003.) [Dkt. # 161.] However, disputes about discovery continue, as reflected in the present motion.

The plaintiff in this case is the Manitoba, Canada estate of Tammy Wright ("Tammy"), through her Committee consisting of Ernest Wright, Tammy's father, and Thomas Frain. (First Am. Compl., ¶¶ 1-2.) [Dkt # 169.] The First Amended Complaint alleges four counts. Count I, alleging breach of fiduciary duty, claims that the defendants diverted insurance proceeds belonging to Tammy; that certain defendants kidnapped her in an attempt to transport her forcibly to Chicago from Canada where her parents were caring for her; that certain defendants refused to withdraw as Tammy's guardian and as Tammy's attorneys in a personal injury lawsuit; and that, when removed by court order, certain defendant attorneys refused to release Tammy's file to her new attorneys. (First Am. Compl., ¶ 16.) The plaintiff seeks damages for "severe and permanent damage to Tammy, including, but not limited to, the following: physical injury, severe emotional distress" and expenditure of funds from her estate for attorney's fees that would not have been necessary but for defendants' actions. (*Id.* ¶ 17.) Counts II, III and IV allege the same facts and damages under theories of aiding and abetting breach of fiduciary duty, false imprisonment, and intentional infliction of emotional distress.

A. Mr. Speck's bills to the plaintiff estate for other litigation.

The first part of the Touhy Defendants' Motion relates to certain bills for legal services rendered by plaintiff's counsel, Fred Speck. A significant portion of the damages sought by the plaintiff estate consists of fees paid to Mr. Speck. *See* Order, Oct. 15, 2002 at 4. Various orders

have been entered by this court, and by Judges Pallmeyer and Schenkier, compelling the plaintiff to produce all documents supporting its damage claim for attorneys' fees. *(Id.* at 4-5.) The records the plaintiff has produced to date supporting the claim for Mr. Speck's fees, in addition to a few bills and a receipt for a cashier's check, are characterized even by Mr. Speck as his "scribbled notes," the vast majority of which are on a photocopy of a ripped court file. (Pl.'s Resp. at 3.)[Dkt # 201.] Mr. Speck will be a witness at the trial in support of the claim for fees. *See* Order, Jan. 10, 2003 at 1. [Dkt # 156.]

At his deposition on April 1, 2003, Mr. Speck testified about other litigation in state court in which he represented the plaintiff estate. However, the plaintiff estate is not seeking recovery for Mr. Speck's fees from that litigation. (Fred Speck dep. at 83- 86, Touhy Defs.' Mot., Ex. C.) According to Mr. Speck, that litigation includes a lawsuit brought by Arthur Engelland and Timothy Touhy (defendants in the present case) seeking a share of the recovery in the personal injury action from which they were removed as attorneys, and a claim by Messrs. Engelland and Touhy in Tammy's probate proceeding. (Pl.'s Resp. at 4.) The Touhy defendants seek documents relating to Mr. Speck's bills to the estate for the services rendered in that case, even though those fees are not being sought as damages in the present action. The Touhy defendants argue that comparing the billing practices of Mr. Speck in those matters to the documents produced in support of the plaintiff's claim for fees in this case may provide grounds for cross-examination and impeachment.

The plaintiff argues that the documents relating to fees for which no recovery is sought in this litigation are not relevant and therefore not discoverable. However, "relevant" evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

3

401. Furthermore, the scope of discovery is not limited to admissible evidence; relevant information is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b).

Here, the plaintiff estate is seeking over $100,000 in fees for services rendered by Mr. Speck, for which the only supporting documentation produced thus far has been some un-itemized bills, a receipt for a cashier's check and some scribbled notes on the back of a file folder. Mr. Speck also represented the plaintiff estate in litigation on related matters involving some of the same parties that are defendants in this lawsuit. It is possible that cross-examination questions comparing his billing practices to the same client on the different matters could be admissible (although decisions on admissibility of evidence ultimately belong to the trial judge). Thus, the Touhy Defendants' Motion is granted in this respect. The plaintiff shall produce documents referring to, comprising or constituting: bills rendered by Mr. Speck to the plaintiff estate, payments made by the estate to Mr. Speck for his services, Mr. Speck's records of time spent or costs incurred, and any contract or agreement between Mr. Speck and the plaintiff estate for legal services. These documents must be produced to the Touhy Defendants' counsel on or before September 22, 2003. This includes all documents in the plaintiff estate's possession, custody or control, including documents in the control of its counsel, Mr. Speck. Fed. R. Civ. P. 34(a).

Although the plaintiff has not raised this issue, it is apparent that those documents may contain attorney-client privileged material or work product with respect to on-going litigation involving the very parties that are defendants here. Because the waiver of privilege resulting from the plaintiff estate's claim in this lawsuit may not include a waiver as to those matters currently being litigated, the court is concerned about protecting the plaintiff estate's confidential disclosures and

its attorney's work product. The limited purpose of the production is a comparison of the *form* of billing and the contract for services. Thus, pursuant to Fed. R. Civ. P. 26(c), the production of the documents shall be limited as follows: The plaintiff may redact from the copies produced any information protected by attorney-client privilege or work-product protection. Access to the documents and any information derived therefrom shall be strictly limited to counsel of record in this case, and shall not be disclosed to any other person, including any party or party representative, or filed or used in connection with any proceeding, without further order of court. Any motion for such an order shall describe specifically how the material may be used without harming the plaintiff estate's ability to conduct the on-going litigation.

B. Plaintiff's claim for fees for services of Donald Bryk.

At the deposition of Ernest Wright on April 30, 2003, Mr. Speck announced that he had just learned that the plaintiff estate had paid Canadian attorney Donald Bryk $250,000 (Canadian), and that the plaintiff will now be claiming that amount as damages. (Ernest Wright Dep. at 175, Pl.'s Resp., Ex. B.) The Touhy Defendants' Motion seeks an order barring the plaintiff from claiming any fees paid to Donald Bryk as damages.

Three judges in this case have entered orders requiring the plaintiff to identify all attorneys' fees claimed as damages and to produce supporting documents. That history is described in this court's previous orders. *See* Order of Oct. 15, 2002 at 4-5, 7; *see also* Order of Nov. 19, 2003 [dkt # 147] (requiring Mr. Speck to produce all documents including any notations that he would use to prepare his testimony). For example, in August 1998, Judge Pallmeyer ordered the plaintiff to produce any checks or receipts supporting the claimed damages and provide a sworn statement about

documents supporting the claim for attorneys' fees. (Order, Aug. 28, 1998.) [Dkt # 62.] In December, 1998, Judge Schenkier ordered: "Plaintiff to produce all documents relating to damages including attorneys' fees, as described in document request No. 5, by 12/17/98. Plaintiff will not be allowed to prove damages at trial for which documents were not produced." (Order, Dec. 10, 1998.) [Dkt # 94.] In response to Judge Pallmeyer's order, the plaintiff served Amended Answers to Interrogatories in September, 1998. (Touhy Defs.' Reply, Ex. A.) [Dkt # 203.] Those answers were verified by Ernest Wright on September 15, 1998. Nowhere in those answers is Donald Bryk mentioned. Answer 13(f), concerning attorneys' fees claimed as damages, lists "Canadian counsel: (not currently available)." (*Id.* at 6.) However, the plaintiff states that the reference to "Canadian counsel" was to Winnipeg lawyer Serena Kraminer, whose fees the plaintiff later decided not to claim in this case. (Pl.'s Resp. at 2-3.)

Plaintiff's Response to the present motion attached the affidavits of Mr. Speck and Ernest Wright in an effort to explain why Mr. Bryk's fees were not included in the previous discovery responses. In his affidavit, Mr. Speck states that he worked closely in the state court with Mr. Bryk from 1993 to 1996, and that Mr. Bryk told him on multiple occasions that he "never billed" Mr. Wright. (Speck Aff. ¶¶ 2-3, Pl's Resp., Ex. A.) Mr. Speck states that he assumed that Mr. Bryk meant that he never charged the plaintiff for his services, and that it was only during a conversation with the other member of Tammy's Committee, accountant Thomas Frain, on April 30, 2003 that Mr. Speck learned that Mr. Bryk had been paid $250,000 (Canadian). (Speck Aff. ¶¶ 4, 6.) At oral argument on the present motion, Mr. Speck stated that the estate had paid the fee in 1996. Mr. Wright's explanation for why in 1998 he verified answers to interrogatories that did not include Mr. Bryk's $250,000 fee was that he "assumed" that Mr. Bryk had told Mr. Speck about the fee, and that

6

he simply left it to Mr. Speck to prepare calculations of damages. (Wright Aff. ¶¶ 8, 11-12, Pl's Resp., Ex. C.) It appears that no documents supporting the claim of $250,000 have been provided to the defendants. In fact, since learning about the $250,000 payment, Mr. Speck has tried "multiple" times to reach Mr. Byrk to obtain records regarding his services, but as of August 12, 2003, Mr. Bryk has not returned his calls. (Speck Aff. ¶ 7.)

Even reduced to its equivalent value in American dollars, an additional claim for $250,000 (Canadian) would almost double the plaintiff's claimed damages regarding attorneys' fees paid. *See* Pl.'s Am. Answers Interrogs. No. 13, Touhy Defs.' Reply, Ex. A.) It cannot be argued (indeed, the plaintiff does not argue) that Mr. Wright was not aware of the 1996 payment of $250,000 when he verified answers to interrogatories in 1998, which made no mention of that payment. Mr. Wright states that he personally negotiated the amount paid to Mr. Byrk. (Wright Aff. ¶ 10.) Interestingly, in response to an earlier motion, the plaintiff estate stated:

> [Ernest Wright] had to report to the Court in Winnipeg, Manitoba for each and every cent spent on attorneys' fees, either after or before said expenditure. If he does not have "knowledge or information regarding attorneys's fees claimed" herein, who does? . . . He reported all to the Court.

(Pl.'s Am. Resp. Touhy Defs.' Joinder Mot. Disqualify at 4-5, emphasis in original.) [Dkt # 140.] A payment by the plaintiff estate to Mr. Bryk of $250,000 would certainly be included in such a report. There is no excuse for not reviewing the reports filed with the Manitoba court in order to make a complete list of payments made by the estate for attorneys' fees that might be sought here. The plaintiff has not provided an acceptable reason why it should not be bound by the verified discovery responses that it gave in response to multiple court orders expressed in the firmest terms.

If the plaintiff is permitted to add this additional claim, the prejudice to the defendants and

7

the potential disruption of the progress of the case are apparent. The plaintiff is not just seeking to increase the amount of damages; the plaintiff is seeking to add an entirely new area of inquiry about Mr. Bryk and the services he rendered. Furthermore, in the four months since the revelation of the payment to Mr. Bryk, the plaintiff has not been able to produce any records relating to the services for which the $250,000 was paid or even to contact Mr. Bryk.[1]

In addition to the authority provided by Rule 37(b)(2)(B), Rule 37(c) suggests the appropriate course here. That subsection provides that a party that fails to disclose required information or to amend a discovery response in a timely manner without substantial justification may not use that information as evidence at the trial, a hearing or a motion unless the failure is harmless. Plaintiff's failure to disclose no later than December 17, 1998 the payment to Mr. Bryk was not substantially justified and was not harmless. Accordingly, the Touhy Defendant's Motion to bar any claim of damages based on amounts paid to Donald Bryk is granted.

C. Tammy's records of treatment by Dr. Evans.

As discussed above, the First Amended Complaint seeks unspecified damages for "severe and permanent injury" to Tammy, including physical injury and severe emotional distress. (First Am. Compl. ¶ 17.) In its answers to interrogatories, the plaintiff stated that, beginning with her kidnapping on February 3, 1992, Tammy suffered traumatic stress and hysteria, from which she still suffers occasionally. (Am. Answers Interrogs. Resp. No. 3, Touhy Defs.' Reply, Ex. A.) In a supplement to those answers, the plaintiff stated, "Tammy was grunting, squirming and crying, with

---

[1] Mr. Wright's affidavit states that Mr. Bryk never billed for the services for which the estate is seeking compensation, although he did bill for other services such as Tammy's divorce. (Wright Aff. ¶ 10.)

8

her eyes bulsing [sic] out, during and after her kidnapping. She suffered fainting spells after the kidnapping, and, possibly, during. To this date, mention of the incident can cause her to have similar physical reactions." (Supp. Am. Answers Interrogs. Resp. No. 11, Touhy Defs.' Reply, Ex. A.) Based on these allegations, the defendants have sought discovery regarding Tammy's medical care. In a hearing on October 10, 2002, the Touhy defendants' counsel requested updated medical records for Tammy. Plaintiff's counsel stated that Tammy had not seen a physician for three and a half years. In view of Tammy's condition, defendants' counsel expressed disbelief.[2] An order was entered requiring the plaintiff to provide by November 15, 2002 updated medical records relating to Tammy's condition from January 1998 to the present. (Order, Oct. 10, 2002.) [Dkt # 144.] In December 2002, the Touhy defendants moved for leave to conduct an independent medical examination of Tammy when she appeared in Chicago for her continued deposition. [Dkt # 152.] That motion was granted. (Order, Jan. 3, 2003.) [Dkt # 154.] Apparently, the independent medical examination was conducted when Tammy was in Chicago in April 2003.

At his deposition on April 29, 2003, Ernest Wright stated that Dr. Evans, a primary care physician, had been treating Tammy for at least five years. (Ernest Wright Dep. at 95-97, Touhy Defs.' Mot., Ex. D.) Until that moment, Dr. Evans was never disclosed as a treating physician, nor had records of his treatment of Tammy ever been produced. The period of his treatment of Tammy, at least five years prior to April 2003, includes the time of plaintiff's amended answers to interrogatories and the supplement to those answers in September 1998. The Touhy Defendants' Motion seeks an order requiring the plaintiff to state why it should not be held in contempt of court

---

[2] In the 1987 collision Tammy suffered severe injuries including brain damage and was rendered a quadraplegic. (Am. Answers to Interrogs. Resp. No. 3.)

9

for not identifying Dr. Evans as a medical care provider and not producing the medical records of Dr. Evans' care in response to discovery and the order entered in October 2002.

Plaintiff's response states that Mr. Speck was not aware of Tammy's treatment by Dr. Evans until Mr. Wright mentioned it at his deposition. (Pl.'s Resp. at 6.) It is difficult to understand why, in light of Tammy's seriously impaired physical condition and the colloquy at the hearing on October 10, 2002, which generated the order compelling updated medical records, Mr. Speck failed to ask Mr. Wright the simple question asked at his deposition: Has Tammy seen any doctor other than her neurologist? (Ernest Wright Dep. at 95.) In a case in which severe physical injury has been alleged, such a question is fundamental. The Federal Rules are explicit about each party's duty to provide complete, non-evasive responses to discovery, and the affirmative duty of a party to supplement "seasonably" disclosures and discovery responses. Fed. R. Civ. P. 26 (e) and 37(a)(3). Parties and attorneys are required to make "reasonable inquiry" in responding to discovery. Fed. R. Civ. P. 26(g). In addition, the order compelling production of medical records from 1998 to the present imposed a further duty to provide a complete response, enforceable by the sanctions provided in Rule 37(b). The plaintiff's failure to provide medical records of Dr. Evans' treatment by November 15, 2002 was a clear violation of the October 10, 2002 order.

Plaintiff's primary response is to argue the defendants have not shown prejudice from the failure to disclose Dr. Evans. Plaintiff's argument is not only incorrect, but more importantly, it misstates the burden. The burden to establish harmlessness (*i.e.*, no prejudice) is on the *plaintiff*, the party who failed to make the disclosure and violated the order. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

The plaintiff argues that Tammy's physical injury claims are now "limited" to "numerous 'spells' that she had after her forcible abduction," which preceded her treatment by Dr. Evans. (Pl.'s Resp. at 7.) However, that argument is contrary to the pleading of the First Amended Complaint alleging "severe and permanent damage" including physical injury. (First Am. Compl. at ¶ 17.) That pleading was filed on April 10, 2003, shortly before Mr. Wright's continued deposition. In addition, plaintiff's argument that its claims are "limited" is contrary to its verified answers to interrogatories, which claim continuing physical injury endured by Tammy during the time when Dr. Evans was treating her.

The plaintiff alleges that Tammy was physically injured by defendants' actions. The medical records of the doctor who has provided primary care for Tammy for at least five years are clearly within the scope of permissible discovery, and should have been produced no later than November 15, 2002, prior to the continued deposition of Tammy and Ernest Wright and in time for the use of those records in preparation for the independent medical examination.

The Touhy defendants request that an order be issued compelling the plaintiff to show cause why it should not be held in contempt. However, such a hearing would be a distraction without advancing the case significantly to resolution. The facts set out above are essentially admitted by the plaintiff. The prejudice to the defendants arises from the fact that Dr. Evans' medical records might have provided additional areas for questioning Tammy and Ernest Wright at their depositions and that the records might have altered the independent medical examination or the conclusions of the examiner. Pursuant to Fed. R. Civ. P. 37(b)(2), the court may enter such orders as are just to punish or remedy a failure to comply with a discovery order. Accordingly, the court enters the following order:

1. The plaintiff must produce all records of Dr. Evans' treatment of Tammy no later than September 22, 2003, and certify in writing that the production is complete;

2. Within 14 days after receiving the certification, the Touhy defendants' counsel shall advise Mr. Speck in writing whether the Touhy defendants wish to resume the depositions of Tammy, Ernest Wright, or both to question them about matters relating to Dr. Evans' medical records, and whether those defendants wish to have a resumed independent examination of Tammy. If the defendants so desire, the plaintiff must produce Tammy or Ernest Wright or both as needed in Chicago at the plaintiff's expense and pay the cost of any resumed medical examination.

### D. The Touhy defendants' costs and fees for bringing the motion.

Pursuant to Fed. R. Civ. P. 37(b), the court finds that the plaintiff's failure to comply with court orders as to both the issue of Mr. Bryk and Dr. Evans was not justified. The issue regarding Mr. Speck's billings in other cases was not previously the subject of an express order, and the court will not impose fees with respect to that issue. Accordingly, it is hereby ordered that the plaintiff shall pay two-thirds of the Touhy defendants' costs and fees for preparing, filing and arguing the present motion. This includes time for legal and factual research but does not include any time for interoffice consultation with other lawyers. The Touhy defendants' counsel shall serve Mr. Speck with a statement of such fees and costs no later than September 22, 2003, specifying the date, time and nature of the services rendered and the applicable billing rate and identifying all costs. By October 7, 2003, the plaintiff must serve a statement of any specific item disputed and pay in full any

amount not disputed. The parties shall comply with Local Rule 54.3 (e) and (f) with respect to any disputed item.

**IT IS SO ORDERED:**

/GERALDINE SOAT BROWN
**United States Magistrate Judge**

**Dated:** **September 8, 2003**