# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 97 C 742 | **DATE** | 10/27/2003 |
| **CASE TITLE** | Estate of Tammy Wright vs. Touhy, et al. ||||

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the Touhy Defendants' Motion to Strike Plaintiff's Supplemental Answers to Interrogatories [199-1] is granted in part and denied in part. Plaintiff's counsel, Fred Speck, must personally pay the Touhy Defendants' fees and costs in bringing the motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. |
|---|---|
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| ✓ | Copy to judge/magistrate judge. |

courtroom deputy's initials: GR

number of notices:
date docketed: OCT 27 2003
date mailed notice: 10/27/2003
mailing deputy initials: GR

Document Number: 226

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMMY WRIGHT, <br> Plaintiff, <br><br> v. <br><br> TIMOTHY J. TOUHY, et al., <br> Defendants. | Cause No. 97 C 742 <br><br> Judge Joan Humphrey Lefkow <br> Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

This case comes to be heard on the Touhy Defendants' Motion to Strike Plaintiff's Supplemental Answers ("the Touhy Defendants' Motion"). [Dkt 199.] For the reasons set forth below, it is hereby ordered as follows:

(a) the Touhy Defendants' Motion is granted in part and denied in part, subject to certain conditions as set forth below; and
(b) Plaintiff's counsel, Fred Speck, must personally pay the Touhy Defendants' fees and costs in bringing the motion.

### Factual Background

The facts underlying this case and the history of discovery are set out in this court's previous orders dated October 15, 2002 and September 8, 2003. [Dkt 145, 207.] Fact discovery closed on July 15, 2003. However, fact discovery disputes continue, as reflected in the present motion.

This matter is based on a long and complex factual situation involving civil and criminal proceedings in various courts in Chicago and Canada. All of the proceedings, including this lawsuit, stem from a collision in 1987 between a commercial truck and a car in which Tammy Wright

1

("Tammy") was riding as a passenger. Tammy was seriously injured and rendered a quadriplegic. Following the collision, Tammy's husband, Anthony De Silva retained the Chicago law firm of Touhy & Associates or attorney Timothy Touhy or attorney Arthur England, or some combination thereof, to open a probate estate for Tammy and pursue a personal injury lawsuit. The estate was opened in the Probate Division of the Circuit Court of Cook County and Anthony was appointed guardian of Tammy's person and estate. However, Tammy's parents, Ernest and Christine Wright,[1] have been Tammy's care-takers since the collision.

The plaintiff in this action is the Manitoba, Canada estate of Tammy Wright through her Committee consisting of Ernest Wright, Tammy's father, and Thomas Frain. (First Am. Compl. ¶¶ 1-2.) [Dkt 169.] The operative pleading is the First Amended Complaint, which was filed in April 2003 and alleges four counts. [Dkt 169.] Count I alleges a breach of fiduciary duty, claiming, *inter alia*, that certain defendants, including attorney Timothy Touhy, refused to forward insurance payments from the Manitoba Public Insurance Company to Tammy's parents; that certain defendants kidnapped Tammy and attempted to transport her forcibly over the Canadian-U.S. border to Chicago; and that, although required by court order, certain defendant attorneys, including Timothy Touhy, refused to release Tammy's case file to her new attorneys. (First Am. Compl. ¶ 16.) Counts II, III and IV allege the same facts under theories of aiding and abetting breach of fiduciary duty, false imprisonment, and intentional infliction of emotional distress.

The Touhy Defendants' Motion is based on plaintiff's alleged failure to comply with certain discovery requests in a timely fashion. Specifically, the Touhy Defendants claim that the plaintiff failed to disclose the identity of eleven individuals who have knowledge of the allegations contained

---

[1] Christine Wright is now deceased.

2

in the First Amended Complaint in compliance with an order entered in 1998 by then-Magistrate Judge Pallmeyer and Federal Rule of Civil Procedure 26(e) and, as a result, should be barred from calling these individuals as witnesses at trial.

Sometime prior to August 1998, the Touhy Defendants served interrogatories on the plaintiff, asking the plaintiff, *inter alia*, to identify all individuals who have knowledge concerning the allegations contained in the Amended Complaint and to provide a description of the nature of each individual's information. (Defs.' Mot., Ex. A, Interrog. No. 7.) According to the Touhy Defendants, after the plaintiff failed to respond to these interrogatories, the Touhy Defendants filed a motion to compel. (Defs.' Mot. ¶ 2.) It appears that the plaintiff then responded to the interrogatories but that its answers were insufficient because, on August 28, 1998, then-Magistrate Judge Pallmeyer granted the Touhy Defendants' motion to compel and ordered the plaintiff, *inter alia*, to supplement its answer to Interrogatory No. 7 and identify *all individuals who have knowledge concerning the incident giving rise to this lawsuit.* [Dkt 61 (emphasis added).]

In September 1998, the plaintiff served Amended Answers to Interrogatories on the defendants. In its Amended Answers, the plaintiff argued that Interrogatory No. 7 was "impossible to answer... overly broad and burdensome" but nonetheless gave the following list of individuals with "relevant, first-hand information" concerning the allegations contained in the Amended Complaint:

> all of the parties to this cause of action (including Tammy and her guardians) (knowledge of all allegations); all health care providers in Chicago, Phoenix and Winnipeg who gave any assistance to Tammy, names and addresses unknown (her condition); members of the Winnipeg Police Department, names and addresses not currently remembered except for an unidentified operator, Ron Oliver, Bob Marshall and Doug McDirmiad (sp?), addresses unknown (Tammy's abduction); members of Canadian law enforcement at the Emerson,

3

> Manitoba, Canadian– U.S. border, names and addresses not known (attempts to take Tammy across the border); Dr. Michael Stambrook, Winnipeg, Manitoba (effect of kidnapping on Tammy); Jack Montgomery, Crown Attorney for Manitoba, and his staff, names and addresses unknown (kidnapping); Joel Bertocchi, Asst. U.S. Attorney for the Northern District of Illinois, and his staff, and F.B.I. Agent Lee W. Harbaugh, and his staff, all at 219 S. Dearborn St., Chicago Illinois (kidnapping).

(Defs.' Mot., Ex. D at. 4-5.)

On September 3, 1998, Judge Pallmeyer granted a fourth motion to compel brought by the Touhy Defendants and ordered the plaintiff to respond to certain interrogatories and requests to produce by September 9, 1998. [Dkt 70.] Although it is unclear from the docket whether that order specifically required the plaintiff to further amend its answer to Interrogatory No. 7, the plaintiff served its first Supplement to Amended Answers to Interrogatories on September 15, 1998, stating in relevant part: "RESPONSE NO. 7: Plaintiffs have identified all individuals." (Defs.' Mot., Ex. E at 2) (emphasis in original).[2]

On March 31, 2003, this court extended the fact discovery cut-off date from July 8, 2003 to July 15, 2003, and set a status hearing on July 15, 2003. [Dkt 163.] This court also ordered that any motions seeking leave to extend the fact discovery cut-off date should be noticed for hearing on July 15th, and must identify specifically what additional discovery needs to be taken. [*Id.*] On July 11, 2003, the plaintiff filed a motion to extend *generally* the deadline for bringing any motions to extend discovery. [Dkt 197.]

---

[2] There is no evidence that the plaintiff further supplemented its answer to Interrogatory No. 7 after September 15, 1998 until July 2003, when it filed the supplemental answers that are the subject of the Touhy Defendants' Motion. Although the plaintiff claims that it supplemented its answers in August 2002 (Pl.'s Resp. ¶ 4), it does not state (or even suggest) that it further supplemented its answer to Interrogatory No. 7 after September 1998. Thus, the answers to Interrogatory No. 7 set forth above are the only answers considered by this court.

At the July 15, 2003 hearing, this court extended fact discovery for the *limited purpose* of allowing the parties to complete the depositions of Timothy Touhy, Fred Speck and Marie Sicotte and held that "[a]ny further discovery sought by any party must be first the subject of meet and confer and, if no agreement can be reached, then a motion may be sought." [Dkt 198.]

At the July 15th hearing, plaintiff's counsel, Fred Speck, stated that he had recently sent the defendants supplemental answers to interrogatories, which included additional names of individuals with knowledge concerning the allegations in the First Amended Complaint. Counsel for the Touhy Defendants, Mitchell Katten, objected, arguing that fact discovery was closed and it was "simply too late" to identify individuals with knowledge regarding the facts of this case.

In the July 2003 supplemental answers, the plaintiff identified – for the first time – eleven individuals who have knowledge concerning the facts of this case: (1) C.N. Mac Kinnon - Sergent on Duty for the Royal Canadian Mounted Police at the Emerson Detachment, P.O. Box 421, Emerson, Manitoba, ROA 0L0, Canada; (2) Vera Layhon[3] - U.S. Customs Supervisor, at the U.S. Customs Port of Entry, Pembina, North Dakota; (3) Michael H. Mach - U.S. Customs Service Agent; (4) James E. Strand - U.S. Customs Service Agent; (5) Anthony L. Onstad; (6) Terry Kreitz - Canadian Customs Agents, Emerson, Canada; (7) Brian Kress - Attorney, Winnipeg, Manitoba; (8) William Murday - Attorney, Chicago, Illinois; (9) John Garafolo - Attorney, Chicago; (10) Bob Clifford - Attorney, Chicago; (11) Kevin Durkin - Attorney, Chicago. (Defs.' Mot., Ex. F at 1-2.)

The plaintiff claims that it added these individuals because defendant Timothy J. Touhy stated new allegations at his July 8th deposition or "recent discoveries" were made at the depositions of other defendants. (Pl.'s Resp. ¶ 9.) The Touhy Defendants argue that "[t]he plaintiff's attempt

---

[3] According to the parties, Vera Layhon is now deceased.

to link its late and deficient disclosures to the timing of the defendants' depositions is unavailing" because all of these individuals were either "plaintiff's own counsel" or known to plaintiff "prior to the time it filed the instant suit." (Defs.' Reply at 3, 7.)

In their briefs, the parties go to great lengths arguing when exactly the plaintiff served its supplemental answers on the Touhy Defendants. The Touhy Defendants claim that the plaintiff did not serve its supplemental answers until July 21, 2003 – six days after the close of fact discovery. (Defs.' Mot. ¶ 8.) The plaintiff contends that it served its supplemental answers on July 11, 2003 – three days before the close of fact discovery. (Pl.'s Resp. ¶ 8.) However, whether or not the plaintiff served these supplemental answers before or after July 15, 2003 is immaterial compared to the more significant issue and the focus of this court's analysis – whether the plaintiff and its counsel violated Judge Pallmeyer's August 28, 1998 order as well as Federal Rules of Civil Procedure 26(g) and (e).

## Analysis

1. *Legal Standard*

The importance of full and fair discovery to the resolution of litigation in the federal courts cannot be underestimated. "In our system of civil litigation, the discovery process is the principal means by which lawyers and parties assemble the facts, and decide what information to present at trial." *Danis v. USN Communs., Inc.*, 2000 WL 1694325 at *1 (N.D. Ill. Oct. 23, 2000) (Schenkier, M.J.). The Federal Rules of Civil Procedure are designed to promote liberal discovery in an effort to narrow the issues for trial and to prevent unfair surprise. *Settles v. Illinois Dept. of Human Servs.*, 2001 WL 987590 at *1 (N.D. Ill. Aug. 28, 2001) (Pallmeyer, J.). *See also Scranton Gillette Communs., Inc. v. Dannhausen*, 1998 WL 566668 at *1 (N.D. Ill. Aug. 26, 1998) (Urbom, J.).

In light of these goals, each party has an obligation under Rule 26(g) to make a reasonable inquiry into the facts of the case before making its discovery disclosures or responses. Fed. R. Civ. P. 26(g). The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. Fed. R. Civ. P. 26(g), Advisory Committee Notes, 1983 Amendment. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances. *Id.*

If a court finds that a party violated Rule 26(g) without significant justification, the imposition of sanctions is mandatory. Specifically, Rule 26(g)(3) provides:

> If without substantial justification a certification is made in violation of the rule, the court, upon motion or its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed. R. Civ. P. 26(g)(3).

Furthermore, Rule 26(e)(2) requires a litigant "seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e)(2). No motion to compel is necessary. *Scranton Gillette Communs., Inc.*, 1998 WL 566668 at *1. The duty to supplement discovery requests lingers on without subsequent solicitation. *Id.* (citing *Pasant v. Jackson Natl. Life Ins. Co.*, 137 F.R.D. 255, 257 (N.D. Ill. 1991)).

A party that violates Rule 26(e)(2) without substantial justification risks significant sanctions. Rule 37(c)(1) provides: "A party that without substantial justification fails ... to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted

to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) also permits a court to impose "other appropriate sanctions," including, but not limited to, attorney's fees and costs. *Id*. In determining whether to exclude evidence or award sanctions, the court must not only consider the importance of the evidence to the case but must weigh that importance against the possible prejudice to the contesting party resulting from its admission into evidence. *Scranton Gillette Communs., Inc.*, 1998 WL 566668 at *2. Indeed, the goal behind Rule 26(e)(2) is to prevent any unfair, prejudicial surprise at trial. *Id*.

2.  *Brian Kress, William Murday, Bob Clifford and Kevin Durkin*

Four of the individuals identified in the plaintiff's supplemental answers -- Brian Kress, William Murday, Bob Clifford, and Kevin Durkin -- were the plaintiff's own attorneys in the underlying state court proceedings (which took place in the mid-1990s) or in the Canadian proceedings. The plaintiff certainly knew these attorneys in 1998; however, it did not list them in its initial answers or its first supplemental answers.

At the October 2, 2003 hearing, plaintiff's counsel stated that he added these attorneys to plaintiff's answer to Interrogatory No. 7 after Mr. Touhy made certain statements at his deposition (taken in 2003) contradicting his previous testimony. Specifically, the plaintiff claims that Mr. Touhy testified at his deposition that he had "detailed negotiations" and made "joint efforts" with Mr. Kress and Mr. Murday to forward the disability payments he received from Manitoba Public Insurance Company to the Wrights. (Pl.'s Resp. ¶ 9.) However, according to the plaintiff, Mr. Touhy previously testified that "he had <u>not</u> attempted to forward said monies [to the Wrights]." (*Id.*) (emphasis in original). Based on this "new allegation," the plaintiff now wants to call Mr. Kress and

8

Mr. Murday to rebut Mr. Touhy's deposition testimony.

In addition, the plaintiff claims that Mr. Touhy testified at his deposition that he had his file for Tammy's case copied at the print shop in his building and "advised [Mr.] Clifford's office" (where Mr. Durkin also worked) that the file was available for pick-up upon payment for the copying. (Pl.'s Resp. ¶ 9.) However, according to the plaintiff, Mr. Touhy gave sworn testimony in the Illinois Probate Court in 1996 that he did not turn over his file to Mr. Clifford's law offices. (*Id.*)

The fact that Mr. Touhy allegedly "changed his story" at his deposition does not excuse the plaintiff's patent failure to name Mr. Kress, Mr. Murday, Mr. Clifford and Mr. Durkin in its initial or amended answers to Interrogatory No. 7, which sought the identities of *all* individuals with knowledge of the allegations in the Amended Complaint. The plaintiff cannot deny that it knew the identity of these individuals – its own attorneys – and the roles they played in the underlying litigation back in 1998, when Judge Pallmeyer specifically ordered the plaintiff to supplement its answer to Interrogatory No. 7 and provide names of all individuals with knowledge of the events giving rise to this lawsuit. However, instead of providing the Touhy Defendants with the names of these attorneys in its initial answers, the plaintiff waited to supplement its answer until *it determined that these individuals had knowledge that was useful to its own case.* This type of selective disclosure is directly at odds with the spirit of liberal discovery and clearly violates Rule 26(e). Because the plaintiff has not provided any valid reason why it did not previously supplement its answer to Interrogatory No. 7 to include the names and contact information for these attorneys, it has failed to comply with Rule 26(e) and those individuals should be stricken from plaintiff's supplemental answers.

On the other hand, the Touhy Defendants do not – and cannot – claim that they were unaware

9

of the identity of plaintiff's former attorneys. Based on that fact and the nature of the purported testimony that plaintiff's counsel plans to elicit from each of these attorneys, it would be unfairly prejudicial to bar these individuals from testifying at trial as rebuttal witnesses. Therefore, this court finds that Mr. Kress, Mr. Murday, Mr. Clifford and Mr. Durkin may be called as rebuttal witnesses at trial but the subject matter of their testimony shall be limited to the matters plaintiff's counsel identified at the hearing. Specifically, Mr. Kress and Mr. Murday may be called solely to rebut testimony by Mr. Touhy that he negotiated or made efforts with them to forward certain disability payments to the Wrights, and Mr. Clifford and Mr. Durkin may be called solely to rebut testimony by Mr. Touhy that he informed their office that his files had been copied and were waiting to be retrieved at the copy center in his building.

2.  *C.N. Mac Kinnon, Vera Layhon, Michael Mach, James Strand, Anthony Onstad and Terry Kreitz*

The plaintiff claims that C.N. Mac Kinnon, Vera Layhon, Michael H. Mach, James E. Strand, Anthony L. Onstad and Terry Kreitz became known as a result of "the commencement of the deposition of Defendant Judith Schoen, and resultant investigation and document procurement" and "additional deposition[s] of the other Defendants." (Pl.'s Resp. ¶ 9(b)). However, the plaintiff does not attach or cite to any portion of any deposition transcript to support its position. In fact, a review of Ms. Schoen's deposition transcript shows that she did not identify any of these individuals during her deposition.

The Touhy Defendants, on the other hand, point to several documents indicating that the plaintiff or plaintiff's counsel knew or should have known the identity of at least some of these individuals prior to July 2003. For example, a review of Anthony Lobue's deposition transcript

10

shows that plaintiff's counsel questioned him regarding Terry Kreitz in May 2003. Additionally, in one of their pleadings in the underlying probate litigation, the Wrights specifically identified U.S. Custom Officials Michael Mach and Anthony Onsted as being present at the Emerson border on February 3, 1992. Finally, in March 1995, Magistrate Judge Bobrick specifically identified Terry Kreitz, C.N. Mac Kinnon, Vera Layhon, Michael H. Mach and Anthony Onstad in a published opinion captioned *In the Matter of the Extradition of Kulekowskis*, 881 F. Supp. 1126, 1133 (N.D. Ill. 1995), *rev'd, DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir. 1997), which was an opinion from the extradition hearing. Based on those documents, it appears that the plaintiff knew or at the very least should have known the identities of these individuals much earlier than July 2003. Yet, again, the plaintiff chose to wait to identify these individuals until it determined that their knowledge was useful to its own case.

Even if the plaintiff could show that it only recently determined the identities of these customs officials, the question still remains as to why plaintiff or its counsel waited so many years after the filing of this lawsuit to investigate who was present at the U.S.-Canadian border on February 3, 1992. At the hearing, plaintiff's counsel stated that, prior to Ms. Shoen's deposition, he thought the confrontation at the border lasted only for a brief period. Apparently, Ms. Shoen testified that the confrontation at the border lasted approximately seven hours, which caused plaintiff's counsel to investigate for the first time who was present at the scene. However, one of plaintiff's central claims in this lawsuit is that, on February 3, 1992, certain defendants attempted to transport Tammy across the Canada-U.S. border. (First Am. Compl. ¶ 16(e)). Based on that allegation, the plaintiff certainly had a duty to investigate who was present and what transpired at the border on February 3, 1992. Yet, over the course of five years, plaintiff's counsel admittedly failed to make

11

any inquiries as to who was present at the border and only named the individuals after their knowledge seemed important to plaintiff's case.

Again, however, the Touhy Defendants cannot claim that they were completely blind-sided by plaintiff's addition of these individuals to its supplemental answers. All of the defendants knew that a confrontation took place at the U.S.-Canadian border on February 3, 1992 and, in fact, five of the defendants were present at the scene and involved in the confrontation. Additionally, several of the documents submitted by the Touhy Defendants in support of their motion (*e.g.*, the pleading from the probate court and the March 1995 published opinion by Magistrate Judge Bobrick) illustrate that the defendants, including the Touhy Defendants, knew or could have known the identity of these individuals several years ago.

However, the defendants may have been relying on the fact that the plaintiff did not list them and made no effort before the close of discovery to obtain the depositions of these individuals, who are outside the subpoena power of the Northern District of Illinois, as an indication that the plaintiff had no intention to present their testimony at trial. *See* Fed. R. Civ. P. 32(a)(3)(B). The plaintiff now suggests that these individuals may testify in person at the trial.[4]

The testimony of these customs officials may be important as to what occurred at the border on February 3, 1992. However, because these individuals are outside the subpoena power of this court and fact discovery is closed, the only way their testimony can be presented is if they appear in Chicago to testify. Therefore, in the interest of fairness, this court finds that the appropriate remedy is to accelerate their testimony in Chicago, and to allow C.N. Mac Kinnon, Michael H. Mach, James

---

[4] At the October 2, 2003 hearing, plaintiff's counsel indicated that the Canadian government is willing to pay the travel expenses for its employees to testify at the trial of this case.

12

E. Strand, Anthony L. Onstad and Terry Kreitz to be named as persons with knowledge and called as witnesses at trial *if and only if* the plaintiff or a third-party pays for them to travel to Chicago to sit for a deposition before January 15, 2004. If the plaintiff does not make these individuals available for deposition in Chicago before January 15, 2004, they are stricken from plaintiff's supplemental answers and barred from testifying at trial. This remedy preserves the testimony of these witnesses, so that if they are unable to appear later their testimony can be presented, yet allows the defendants sufficient time in advance of the trial to do any follow up suggested by the testimony of these witnesses. Thus, if C.N. Mac Kinnon, Michael H. Mach, James E. Strand, Anthony L. Onstad or Terry Kreitz are deposed pursuant to this order and any new material information (including, but not limited to, the identity of any individuals not previously named who were present at the border) is divulged during the deposition, the defendants may file a motion to extend fact discovery for the limited purpose of investigating this new material information. This does not foreclose any party from presenting a witness who has been deposed as a live witness at the trial.

Because Vera Layhon is deceased, the issue as to whether or not to bar her from testifying at trial is moot.

4. *John Garafolo*

The Touhy Defendants claim that John Garafolo represented the defendant Trucking Company in the underlying state court personal injury case and was known to plaintiff and its counsel since the early 1990s. (Defs.' Reply at 3, 5.) In its response, the plaintiff does not dispute its prior knowledge of Mr. Garafolo or his role in the underlying case. Rather, the plaintiff simply states that its counsel recently learned that Mr. Garafolo told Winnipeg officials that he did not seek a medical exam of Tammy Wright until six months after her alleged abduction. (Pl.'s Resp. ¶ 9(c).)

13

That is not a basis upon which the plaintiff can supplement its answer just as fact discovery is closing. At the hearing on the Touhy Defendant's Motion, plaintiff's counsel admitted that he spoke with Mr. Garafolo in 1993, but that he did not ask him when he sought a medical exam of Tammy. That constitutes a patent failure to investigate by plaintiff's counsel, and there is no justification for plaintiff's waiting five years to add Mr. Garafolo to its answer to Interrogatory No. 7. Therefore, Mr. Garafolo is stricken from plaintiff's supplemental answers and the plaintiff is barred from calling Mr. Garafolo as a witness at trial.

5. *Imposition of Attorneys' Fees and Costs*

Rule 37 provides for the imposition of attorneys' fees and costs incurred by the other party when a party fails to comply with an order or amend a prior response to discovery as required by Rule 26(e)(2), unless the court finds the failure was substantially justified. Fed. R. Civ. P. 37. Furthermore, as set forth above, Rules 26(g) and 26(e) permit a court to impose attorneys' fees and costs when a party has violated those rules without substantial justification.

In this case, Mr. Speck has not offered any substantial justification or any persuasive explanation for the untimely disclosure of these eleven individuals. In fact, at the argument on the Touhy Defendant's Motion, Mr. Speck explained that it is not his "style" to undertake an investigation until he hears what the other side has to say, in this case, at the deposition of the defendants. *See also* Pl.'s Resp. Touhy Defs.' Mot. Cite Add'l Authority ¶ 5. [Dkt 221.] That argument completely ignores the affirmative obligation of a party to make a reasonable inquiry in order to respond to discovery propounded by another party. The plaintiff and its counsel had an obligation to investigate and provide information that the defendants had a right to have, *whether or not* the plaintiff wanted to have that information. That obligation was reinforced by two separate

orders by Judge Pallmeyer. There is simply no excuse for Mr. Speck to have ignored that obligation. Counsel must adapt their "style" to follow the Federal Rules of Civil Procedure and the court's orders.

Therefore, pursuant to Rules 37, 26(g) and 26(e), Fred Speck must personally pay the Touhy Defendants the attorneys' fees and costs that the Touhy Defendant's incurred in preparing, filing and arguing the present motion. Counsel for the Touhy Defendants shall serve Mr. Speck with a statement of such fees and costs no later than November 10, 2003, specifying the date, time and nature of the services rendered and the applicable billing rate and identifying all costs. This includes time for legal and factual research but does not include any time for interoffice consultation with other lawyers. By November 24, 2003, Mr. Speck must serve a statement of any specific item disputed and pay in full any amount not disputed. The parties shall comply with Local Rule 54.3 (e) and (f) with respect to any disputed item.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

October 27, 2003