# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 97 C 742 | **DATE** | 12/31/2003 |
| **CASE TITLE** | Estate of Tammy Wright vs. Touhy, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the Touhy Defendants' Motion to Bar Testimony of Dr. Michael Stambrook Based on Failure to Provide Expert Report [209-1] is granted in part, and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 3 1 2003 | |
| | Notified counsel by telephone. | | date docketed | 246 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | 12/31/2003 | |
| ✓ | Copy to judge/magistrate judge. | CLERK | date mailed notice | |
| | GR courtroom deputy's initials | 03 DEC 31 PM 1:10 Date/time received in central Clerk's Office | GR mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANITOBA CANADA ESTATE ) | |
| OF TAMMY WRIGHT, ) | |
|     Plaintiff, ) | Cause No. 97 C 742 |
| ) | |
| v. ) | Judge Joan Humphrey Lefkow |
| ) | Magistrate Judge Geraldine Soat Brown |
| TIMOTHY J. TOUHY, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

This case comes to be heard on the Touhy Defendants' Motion to Bar Testimony of Dr. Michael Stambrook Based on Failure to Provide Expert Report ("the Touhy Defendants' Motion"). [Dkt 209.] For the reasons set forth below, the Touhy Defendants' Motion is granted in part and denied in part.

### Factual Background

Sometime prior to August 1998, the Touhy Defendants served, *inter alia*, the following interrogatories on the Estate of Tammy Wright ("Plaintiff"):

    Interrogatory No. 4    Please identify each and every doctor, psychiatrist, psychologist, social worker, therapist, counselor, or health care provider ("health care professional") by whom Tammy has been examined, received a diagnosis or received care or treatment since January 1, 1983;

    Interrogatory No. 6    Please identify (a) each doctor, psychiatrist, psychologist, social worker, therapist, counselor, or health care provider whom Tammy has seen or consulted in connection with any claim which [is] asserted in her Amended Complaint . . . .;

1

<dl>
<dt>Interrogatory No. 7</dt>
<dd>Identify all individuals who have knowledge concerning the allegations contained in your Amended Complaint . . . .; and</dd>

<dt>Interrogatory No. 12</dt>
<dd>Please identify each person whom you expect to call as an expert witness at the trial of this case . . . .</dd>
</dl>

(Touhy Defs.' Mot. Strike Pl.'s Suppl. Answers to Interrogs., Ex. A at Interrogs. 4, 6, 7, 12.) [Dkt 199.]

Although the parties have not provided the court with a copy of Plaintiff's initial responses to those interrogatories, Plaintiff's Amended Answers to Interrogatories ("Amended Answers"), which were served in September 1998, identified Dr. Michael Stambrook in response to Interrogatory Nos. 4, 6 and 7. (*Id.*, Ex. D at Resp. Nos. 4, 6, 7.) Plaintiff also indicated in its Amended Answers that Dr. Stambrook examined Tammy on two occasions (in June 1992 and October 1993) and knew about the "effect of [the] kidnapping on Tammy." (*Id.*, Ex. D at Resp. Nos. 4, 6, 7.) Plaintiff further explained: "The purpose of the first exam was to assess the effect that the kidnapping had on Tammy. The second was to assess the possible effect on Tammy by forcing her to interact and cooperate with her kidnappers in the prosecution of her personal injury litigation." (*Id.*, Ex. D at Resp. No. 6.) In response to Interrogatory No. 12, which sought the identity of Plaintiff's experts, Plaintiff simply responded: "Unknown at this time." (*Id.*, Ex. D at Resp. No. 12.)[1]

---

[1] One of Plaintiff's claims in this lawsuit is that defendant Timothy Touhy and other lawyers who were then representing Tammy Wright's estate in the state court lawsuit arising from her vehicle collision should have withdrawn voluntarily after the February 3, 1992 event that Plaintiff alleges was a kidnapping of Tammy orchestrated by her then-counsel and Tammy's former husband. Instead, Plaintiff claims, Tammy's parents spent $200,000 to obtain a court-ordered change of counsel. (Touhy Defs.' Suppl. Mem., Ex. A , Tr. Oct. 21, 2003 at 4-5.) [Dkt 233.] Dr. Stambrook apparently submitted reports to Canadian counsel and Mr. Speck stating that traveling to Chicago in connection with the state court litigation would be traumatic for Tammy. (Touhy Defs.' Mot. Bar Test., Exs. B, C and D.) Some or all of those reports were submitted to the Circuit Court of Cook County in response to an order issued by that court ordering Tammy to be produced for medical examination in Chicago. (*Id.*, Ex. F.)

On May 14, 2003, this court ordered that Plaintiff's Rule 26(a)(2) disclosures, including Rule 26(a)(2)(B) reports, were to be served no later than August 29, 2003. [Dkt 185.][2] On that same day, Plaintiff's counsel, Fred Speck, stated in open court that he intended to call "the physician in Winnipeg" (presumably Dr. Stambrook) as "an expert but really he is a treater." The court noted that a treating physician must be disclosed and Plaintiff must serve a Rule 26(a)(2) disclosure with respect to any opinion that the treating physician is going to render "outside of simply what the medical records disclose, what he did and why he did it." (Touhy Defs.' Reply, Ex. D, Tr. May 14, 2003 at 29.)

On August 29, 2003, Mr. Speck sent a letter to the Touhy Defendants' counsel stating: "Although we do not intend to call an expert under F.R.C.P. 26, we do intend on calling Dr. Michael Stambrook in the trial of this cause, all of whose reports and records have been previously submitted in the above-entitled action." (Touhy Defs.' Mot. Bar Test., Ex. A.) According to the Touhy Defendants, Plaintiff has produced four letters prepared by Dr. Stambrook responding to certain questions posed by Plaintiff's current and former attorneys in connection with other legal proceedings and sixteen pages of handwritten notes that appear to be Dr. Stambrook's notes from his interviews with Tammy. (*Id.* ¶¶ 6, 7; Exs. B-E.)

Based on those documents, it appears that Dr. Stambrook is a Clinical Psychologist and Neuropsychologist in Manitoba, Canada. (*Id.*, Ex. E at 2.) Dr. Stambrook also states that he is an

---

[2] Federal Rule of Civil Procedure 26(a)(2)(B) provides in pertinent part: "Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness."

Associate Professor of Clinical Health Psychology and Rehabilitation Medicine in the Faculty of Medicine at the University of Manitoba. (*Id.*, Ex. E at 2.) He is regarded "as an expert in [his] field in the courts in Canada," and he has "provided testimony and [has] been published widely in neuropsychological, neurosurgical and medical journals." (*Id.*, Ex. E at 2.)

Dr. Stambrook apparently conducted three "clinical assessments" of Tammy's physical and psychological condition on June 26, 1992, November 18, 1992, and October 25, 1993.[3] (*Id.*, Exs. B-D.) Dr. Stambrook also interviewed Tammy's parents and reviewed certain documents regarding Tammy's medical condition. There is no indication that Dr. Stambrook provided any counseling or psychotherapy or prescribed any medication to Tammy. Dr. Stambrook did, however, prepare four written reports (on June 27, 1992; November 24, 1992; October 25, 1993; and January 7, 1999) and signed an affidavit – all of which were used in various legal proceedings. (*Id.*, Exs. B-E, G.) The significant report for purposes of the present motion is Dr. Stambrook's October 25, 1993 report. (*Id.*, Ex. D.)

*The Touhy Defendants' Motion and Plaintiff's Response*

On September 12, 2003, the Touhy Defendants filed the present motion arguing that Dr. Stambrook is not a treating physician but a retained expert (*Id.* ¶ 8) and seeking to bar the testimony of Dr. Stambrook due to Plaintiff's failure to provide an expert report pursuant to Rule 26(a)(2)(B).[4]

---

[3] The parties dispute whether Dr. Stambrook conducted these "clinical assessments" at the request of Tammy's parents or at the request of Plaintiff's lawyers.

[4] The Touhy Defendants' motion also sought an extension of time for defendants' expert disclosure. [Dkt 209.] That portion of the motion was granted on September 17, 2003. [Dkt 210.]

4

On September 17, 2003, the court set a briefing schedule on the Touhy Defendants' Motion and specifically ordered Plaintiff to identify in its response: (a) the purpose for which Dr. Stambrook will be called as a witness; and (b) what testimony (in summary) Plaintiff expects Dr. Stambrook to give. (September 17, 2003 Order.) In its response, Plaintiff failed to answer those questions with any specificity. Rather, Plaintiff simply stated that it intended to call Dr. Stambrook "as a witness <u>with regard to his assessments 10 and 11 years ago</u>" (Pl.'s Resp. ¶ 5) (emphasis in original); that it can best describe Dr. Stambrook as an "<u>occurrence</u> witness" (*Id.* ¶ 5) (emphasis in original); and that his testimony would be "in line with his October 25, 1993 correspondence." (*Id.* ¶ 5.)

*October 21, 2003 Hearing On The Touhy Defendants' Motion*

A hearing was held on the Touhy Defendants' Motion on October 21, 2003. During the hearing, Plaintiff's trial counsel, Arthur Sanderman, admitted that Dr. Stambrook did not "treat" Tammy. (Touhy Defs.' Suppl. Mem., Ex. A , Tr. Oct. 21, 2003 at 11.) When asked by the court to clarify the substance of Dr. Stambrook's testimony, Plaintiff's counsel, Fred Speck, pointed to the following paragraph of Dr. Stambrook's October 25, 1993 report:

> ... [Tammy] was not aware of the reason of my assessment with her today, despite this being a topic of conversation between her father and her mother. I specifically outlined for her why I was seeing her and then asked her of her knowledge of Mr. Touhy. She states that she knew him to be her ex-husband's attorney and then she demonstrated very obvious visible upset when I asked her if she wanted him to be her lawyer. She became visually flushed, somewhat agitated, and with clear statements, through her communication device, that she would be "shocked very much" and, when I enquired why, she stated that "he and Anthony tried to kidnap me." She states that she never would want him as a lawyer, that he frightens her, and that she would be fearful that "I would be kidnapped again and I would never come home." She has significant fear of being placed, again, in a nursing home and that she wants, very strongly, to be in Winnipeg with her mother and father. She stated that "it scared me too much" to be with Mr. Touhy and, I confirmed with her, that she has never met Mr.

> Touhy but feels that she would be "too scared to be with him" and "couldn't trust him." She said that she was scared and frightened even with the discussion that I had in my office with her mother and father in attendance. She has some understanding that there is a lawsuit ongoing in relation to her accident, but she does not know specifics of this. She is unaware of who she is represented by in Winnipeg or, in Illinois. Her presentation to me was genuine, unrehearsed, with her presenting perplexity as well as bewilderment at what we were discussing, but with significant fear being present regarding her ex-husband and Mr. Touhy.

(*Id.* at 8-9; Touhy Defs.' Mot. Bar Test., Ex. D at 2.) Mr. Speck claimed that certain portions of the anticipated testimony (*i.e.*, the questions Dr. Stambrook asked Tammy and his observations of her reactions) are "statements of fact." (Tr. Oct. 21, 2003 at 9.) Mr. Speck also stated that Dr. Stambrook would testify that Tammy has "clear recollection of the previous kidnapping and many thoughts of this" which, according to Mr. Speck, is also a "statement of fact" (*Id.* at 9, 20.) Mr. Sanderman added that he intended Dr. Stambrook to testify "[p]articularly" that Tammy's fear was "a real fear and a genuine fear." (*Id.* at 11.)

At the conclusion of the hearing, the court summarized Dr. Stambrook's anticipated testimony as follows: (1) the questions he posed to Tammy; (2) the responses Tammy provided to those questions; (3) his observations of Tammy's physical demeanor; and (4) his observation that Tammy expressed genuine fear. (*Id.* at 19.) Counsel for Plaintiff agreed with that summary.[5] The court then asked the parties to submit additional briefs on whether Dr. Stambrook's proposed testimony that Tammy's fear was "real" or "genuine" falls within the ambit of Federal Rule of Evidence 701, which governs lay opinion testimony, or Rule 702, which governs expert testimony.

---

[5] Not only did Plaintiff's counsel agree to this summary at the October 21, 2003 hearing but Plaintiff stated in its Supplemental Memorandum that any portions of Dr. Stambrook's October 1993 report and June 1992 report not specifically cited by Plaintiff at the hearing are "irrelevant, and will not be argued." (Pl.'s Suppl. Mem. at 4.) Therefore, Plaintiff may not elicit any testimony from Dr. Stambrook that was not specifically articulated by Plaintiff's counsel as part of Dr. Stambrook's proposed testimony.

6

## Analysis

As a preliminary matter, this decision is not a ruling on the admissibility of Dr. Stambrook's proposed testimony, which is an issue for the trial judge. Rather, the Touhy Defendants' Motion presents *only* the issue of whether Dr. Stambrook's testimony should be barred completely or in part because Plaintiff has not made any disclosures pursuant to Rule 26(a)(2).

Federal Rule of Civil Procedure 26(a)(2) requires the parties to disclose, at a time set by the court or in the alternative by the rule, the identity of any person who may be used at trial to present testimony under Rules 702, 703 or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A), (C). Fed. R. Civ. P. 26(a)(2)(B) also requires each witness who is retained or specially employed to present expert testimony or whose duties as an employee of a party include presenting expert testimony to provide a written report setting forth, *inter alia*, the opinions to be offered and the basis therefor. "The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Rule 37 in turn provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Given the plain language of Rule 37, "[t]he sanction of exclusion is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *NutraSweet Co. v. X-L Engr. Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). The lower court enjoys "broad discretion" in evaluating the justification for, and harm resulting from, the failure to comply

7

with Rule 26(a). *Miksis v. Howard*, 106 F.3d 754, 760 (7th Cir. 1997).

In this case, Plaintiff was required to provide Rule 26(a)(2) disclosures no later than August 29, 2003. On that day, Plaintiff's counsel served the letter quoted above, and did not serve a report pursuant to Rule 26(a)(2)(B). The requirement of a report applies only to retained experts or employees whose duties include expert testimony. *Zurba v. United States*, 202 F.R.D. 590, 591 (N.D. Ill. 2001). Thus, certain experts may testify (and provide Rule 702 testimony) at trial without their testimony having been preceded by an expert report, assuming they have been disclosed pursuant to Rule 26(a)(2)(A). *Abbott Laboratories v. Torpham, Inc.*, No. 97 C 7515, 2003 WL 22462614 at *5 n. 6 (N.D. Ill. Oct. 29, 2003) (Nolan, M.J.). A treating physician whose testimony is limited to his or her observation and treatment of the plaintiff falls into that category. *Zurba*, 202 F.R.D. at 591-92.[6]

In this case, there might have been an issue as to whether Dr. Stambrook was required to submit a report. He is certainly not Plaintiff's employee. If Plaintiff had disclosed Dr. Stambrook pursuant to Rule 26(a)(2)(A), and sought to introduce expert opinions that Dr. Stambrook formulated for presentation in the previous state court litigation, there may have been a dispute as to whether he was required to provide an additional report, since Dr. Stambrook was not retained to provide expert

---

[6] In *Zurba*, the court held that if the treating physician formulated opinions as to prognosis, permanency, and causation during and as part of the treatment, the physician is not required to submit a Rule 26(a)(2)(B) report. 202 F.R.D. at 592. Other courts, including this court, hold that if a treating physician's testimony will include opinions as to prognosis, permanency, and causation, the physician must submit a Rule 26(a)(2)(B) report. *See, e.g.*, *Zarecki v. National R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (treating physician's opinions as to ultimate causation and foreseeability are not derived solely from treatment or personal observations and require a Rule 26(a)(2)(B) report); *Schoolman v. UARCO, Inc.*, No. 94 C 5598, 1999 WL 47124 at *3 (N.D. Ill. Jan. 20, 1999) (Coar, J.) (treating physician is not required to submit report if testimony is limited to the physical condition of the plaintiff as observed by the physician). *See also* http://www.ilnd.uscourts.gov/JUDGE/Coar/Expert.htm. The parties in this case were specifically advised of the court's position. (Tr. May 14, 2003 at 29.)

opinions "in th[is] case." Fed. R. Civ. P. Rule 26(a)(2)(B). However, it is not necessary to decide that question because Plaintiff has significantly narrowed the issues by expressly disclaiming any intention to adduce any expert testimony. In his August 29, 2003 correspondence to Mr. Katten, Mr. Speck specifically stated that Plaintiff does not intend to call an expert under Fed. R.Civ. P. 26. Likewise, in the hearing on the present motion, Plaintiff's counsel stated that Plaintiff would call Dr. Stambrook as a fact or occurrence witness, not as an expert witness. Therefore, Dr. Stambrook should not be permitted to render expert opinion testimony pursuant to Federal Rules of Evidence 702, 703, or 705. *See* Fed. R. Civ. P. 37(c) (permitting the court to exclude expert witnesses not properly disclosed under Rule 26(a)). *See also Rebolledo v. Herr-Voss Corp.*, 101 F. Supp. 2d 1034, 1038-39 (N.D. Ill. 2000) (precluding doctors from testifying as experts because neither doctor was designated as an expert by plaintiff under Rule 26(a)(2)(A) and neither doctor prepared an expert report as required by Rule 26(a)(2)(B)).

However, "[a] doctor does not qualify as an expert witness simply because of his status." *Kondziolka v. Burlington N. and Santa Fe Ry. Co.*, No. 99 C 2148, 2000 WL 1368041 at *1 (N.D. Ill. Sept. 15, 2000) (Castillo, J.). Indeed, "Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony." *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (considering the earlier version of Rule 26). As set forth above, the substance of Dr. Stambrook's anticipated testimony consists of: (1) the questions he asked Tammy; (2) the responses Tammy provided to those questions; (3) his observations of Tammy's physical demeanor; and (4) his observation that Tammy expressed genuine fear and had a clear recollection of certain events. If that testimony can only be characterized as expert opinion testimony subject to Rule 702, Dr. Stambrook must be barred from testifying in this case because Plaintiff failed to make any expert disclosures pursuant to Rule

9

26(a)(2). However, if Dr. Stambrook's proposed testimony can be described as fact testimony or lay opinion testimony, it is not barred by the failure to make Rule 26(a)(2) disclosures.

Federal Rule of Evidence 701 provides that a witness who is not testifying as an expert may offer opinions or inferences that are:

> (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) **not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.**

Fed. R. Evid. 701 (emphasis added).[7] Lay opinion testimony "most often takes the form of a summary of first-hand sensory observations." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (citing *Asplundh Mfg. Div. v. Benton Harbor Engr.*, 57 F.3d 1190, 1196-1202 (3d Cir. 1995)). In the *Conn* case, the Seventh Circuit quoted the "helpful summary of lay opinion testimony" expressed by the Third Circuit in the *Asplundh* case:

> The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences. . . . Other examples of this type of quintessential Rule 701 opinion testimony include identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, the value of one's property.

*Id.* at 554 n. 2 (quoting *Asplundh*, 57 F.3d at 1196-98). "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Conn*, 297 F.3d at 554 (quoting *United States v. Peoples*, 250

---

[7] Rule 701 was amended, effective December 1, 2000, to emphasize that lay opinion testimony is limited to those observations of a lay witness that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

F.3d 630, 641 (8th Cir. 2001)).

Expert opinion testimony, on the other hand, need not be based on first hand knowledge of the facts of the case. Expert opinion "brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." *Conn*, 297 F.3d at 554. Specifically, Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Although Dr. Stambrook possesses specialized knowledge, portions of his proposed testimony are not *opinion* based on his specialized knowledge (*i.e.*, the questions he asked Tammy and the statements Tammy provided in response to those questions).[8] That testimony cannot therefore be expert opinion testimony under Rule 702. In addition, Dr. Stambrook's first-hand sensory observations of Tammy's physical appearance and behavior fall within the prototypical example set forth in *Asplundh* as the type of evidence contemplated by the adoption of Rule 701. However, Dr. Stambrook's proposed testimony that Tammy's fear was "genuine" and Tammy had a "clear recollection of the previous kidnapping" presents a more difficult question.

A lay witness providing opinion testimony cannot rely on specialized training or knowledge

---

[8] The Touhy Defendants argue that testimony regarding Tammy's responses to Dr. Stambrook's questions is objectionable as conclusory and/or inadmissible hearsay. However, whether such objections would be sustained is an issue for the trial court and is not before this court at this time.

11

that "is outside of the average juror's sphere of knowledge." *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 859 (N.D. Ill. 2001). Thus, even if Dr. Stambrook's testimony is based on his personal observations and within his personal knowledge, it may not go beyond the common experience, knowledge or observations of lay persons. Whether certain testimony requires a witness to resort to "scientific, technical or other specialized knowledge" within the scope of Rule 702 depends on the particular facts of the case. *Id.* For example, in *Brandon*, a doctor made a certain diagnosis that, according to the court, "any lay person could make based on [plaintiff's] statements, so no specialized or 'expert' knowledge was required . . . ." *Id.* Based on that finding, the *Brandon* court concluded that the doctor's diagnosis was not subject to Rule 702 and he did not need to be disclosed as an expert to offer testimony at trial. *Id.*

In some cases, courts have permitted lay witnesses to testify similarly to Dr. Stambrook's proposed testimony. In *Wayne v. Benson*, 89 F.3d 530, 534 (8th Cir. 1996), for example, a lay person testified that another individual appeared "pitch white" and "really scared." Similarly, in *Dindo v. Whitney*, 52 F.R.D. 194, 196 (D.N.H. 1971), *vacated on other grounds*, 451 F.2d 1 (1st Cir. 1971), an insurance adjuster, who visited the plaintiff at his home after an automobile accident, testified that plaintiff was "mentally alert" and "had a clear recollection of the circumstances surrounding the accident." It does not appear, however, that in either case an objection was made that the testimony was beyond Rule 701, and both cases predate the 2000 amendment of Rule 701. On the other hand, the Touhy Defendants point to three cases in which expert testimony was offered on whether fear was "genuine" or "real." (Touhy Defs.' Suppl. Mem. at 11.) In two of the cases, experts were specifically retained to provide Rule 702 testimony, and thus, the issue of whether the testimony would have been

permitted if offered as lay opinion testimony was not addressed.⁹ In the third case, *United States v. Cecil*, 836 F.2d 1431, 1435-36, 1439 (4th Cir. 1988), the proposed opinion testimony was excluded as irrelevant.¹⁰

The question is whether, in reaching the opinion that Tammy's fear was "genuine" and that she had a "clear recollection of the previous kidnapping," Dr. Stambrook drew upon his "scientific, technical, or other specialized knowledge." If he did so, that opinion is within the scope of Rule 702, and may not be used at trial. That question can best be answered by Dr. Stambrook in deposition. According to Plaintiff, Dr. Stambrook, who is located in Winnipeg, is willing to make himself available for a deposition. (Pl.'s Suppl. Mem. at 5.) Therefore, the defendants may depose Dr. Stambrook and inquire whether any specific portion of his proposed testimony is based on his scientific, technical or other specialized knowledge such that it would fall within Rule 702.

There can be no dispute, however, that "in the mind of the typical lay juror, a scientific witness has a special aura of credibility." *Barefoot v. Estelle*, 463 U.S. 880, 926 n. 8 (1983) (Blackmun, Brennan, Marshall, JJ., dissenting) (quoting Edward J. Imwinkelried, *Evidence Law and*

---

⁹ In *Paine v. Massie*, 339 F.3d 1194, 1197 (10th Cir. 2003), an expert psychologist was retained to give testimony at trial as to whether a criminal defendant was in fear "at the time of [the alleged criminal act]" for purposes of establishing self-defense. In *United States v. Schappel*, 445 F.2d 716, 718-719 (D.C. Cir. 1971), a criminal defendant, prior to trial, was committed to a hospital for a mental examination to determine whether he was competent to stand trial and his responsibility for the act charged. After observing and interviewing the criminal defendant, two psychiatrists concluded that the criminal defendant was not mentally ill but simply had, *inter alia*, a "realistic fear of the police." *Id.* at 719.

¹⁰ More specifically, the *Cecil* court affirmed the lower court's exclusion of a psychiatrist's out-of-court statements regarding the competency of a coconspirator, including his opinion that the coconspirator's fear was "real and inordinate," on the grounds of relevancy. *Id.* at 1436, 1439. The court found that, since the psychiatrist's statements dealt with the emotional condition of the coconspirator in 1977, they were irrelevant to the issue of the coconspirator's ability to tell the truth in 1983. *Id.* at 1439.

*Tactics for the Proponents of Scientific Evidence, in Scientific and Expert Evidence* 33, 37 (Edward J. Imwinkelried ed., 1981). Because Plaintiff has decided not to use (and disclose) expert testimony in this case, Plaintiff should not be permitted to elicit any testimony from Dr. Stambrook regarding his training, qualifications or expertise beyond that of his occupation and his reasons for observing Tammy. Such qualification testimony would be irrelevant to his lay opinions under Rule 701.

## Conclusion

For the foregoing reasons, the Touhy Defendants' Motion is GRANTED insofar as expert testimony from Dr. Stambrook is barred by Plaintiff's failure to make Rule 26(a)(2) disclosures, but DENIED to the extent that the motion seeks to preclude Dr. Stambrook from providing fact testimony or lay opinion testimony permitted by Fed. R. Evid. 701, as described herein. The defendants may depose Dr. Stambrook to determine if any of the opinions that Plaintiff proposes as part of Dr. Stambrook's testimony are based on his training, qualifications or expertise. This ruling does not preclude any party from making appropriate objections to the trial judge.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

December 31, 2003